In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-4044 & 00-1306

Mary A. O'Regan,

Plaintiff-Appellant,

v.

Arbitration Forums, Inc.,
a New York not-for-profit
corporation, and Yvonne Weaver,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 6464--Harry D. Leinenweber, Judge.

Argued September 6, 2000--Decided April 9, 2001

Before Manion, Kanne, and Diane P. Wood, Circuit
Judges.

Manion, Circuit Judge. Mary Ann O'Regan sued her
former employer, Arbitration Forums (AF),
alleging that AF terminated her because of her
sex and age in violation of Title VII and the Age
Discrimination in Employment Act (ADEA). The
parties filed cross-motions for summary judgment,
and the district court granted AF's motion,
concluding that O'Regan failed to demonstrate
that AF's legitimate, non-discriminatory reason
for her termination (her failure to sign an
employment agreement) was a pretext for
discrimination, and that the employment agreement
did not have a disparate impact on women. O'Regan
appeals, arguing that the district court judge
erroneously granted AF's summary judgment motion,
erroneously refused to recuse himself from the
case, and abused his discretion in granting AF's
amended bill of costs. We affirm.

I.

Arbitration Forums (AF) is a non-profit
corporation that provides arbitration services to
insurance companies. AF hired Mary Ann O'Regan to
the position of Illinois Administrator in April
1989, and promoted her to the Branch Manager
position in August 1989. O'Regan resigned from AF

in June 1990 to complete her Master's Degree in Management and to fulfill family responsibilities. AF rehired O'Regan in January 1991 to the position of Central Regional Manager on an at-will basis.

In 1992, AF was involved in a dispute with Resolute Systems, a competing company in the arbitration services market. AF claimed that Resolute had obtained confidential information from former AF employees. AF and Resolute resolved their dispute after Resolute agreed to modify its materials in 1993 to distinguish them from AF's documents.

After the dispute with Resolute arose, AF decided to require all of its 85 managers to sign an employment agreement that included a covenant not to compete. AF reviewed an initial draft of an employment agreement prepared by attorney John Cacciatore. But after consulting with another attorney, Thomas Steele, AF rejected Cacciatore's draft and adopted Steele's more comprehensive employment agreement, which contained a non-compete provision prohibiting AF employees from working for AF's competitors in the insurance arbitration industry for a two-year period anywhere throughout the United States. Steele also recommended that AF: require all managers to sign the employment agreement, refuse to negotiate the terms of the Agreement, and terminate employees who refused to sign the Agreement for cause. AF's President, Yvonne Weaver, followed Steele's advice. She distributed the employment agreement to all of AF's management and professional level employees, along with a memorandum stating that all employees were required to execute the Agreement within ten business days. She asserted that AF would not negotiate any modifications, and that employees who failed to sign the Agreement would be terminated for cause.

After receiving the memo and employment agreement, O'Regan consulted an employment law attorney. The attorney advised her that the Agreement violated Illinois public policy, was overly broad, draconian in scope, and lacked adequate consideration. Based on her attorney's opinion, O'Regan notified AF that she would not sign the employment agreement, but would be willing to negotiate a new one. Weaver consulted Steele about O'Regan's position, and Steele advised her to terminate O'Regan. AF terminated O'Regan on October 8, 1993. She was 47 years old at the time of her termination. Weaver replaced O'Regan with Terance Bryant, a 32-year-old male.

Out of the 85 management level and professional employees who received and were required to sign

the employment agreement, four female middle managers (including O'Regan) refused to sign. AF terminated all four of them for the proffered reason that they refused to sign the employment agreement. All 15 of AF's male managers and management trainees signed the employment agreement.

After she was fired, O'Regan sued AF, alleging claims of breach of oral promise, promissory estoppel, breach of implied contract, retaliatory discharge, sex and age discrimination, tortious interference, Sherman Act violations, Illinois Antitrust Act violations, and conspiracy. Upon AF's motion to dismiss, the district court dismissed all of O'Regan's claims, and O'Regan appealed to this court. We affirmed the dismissal of all of O'Regan's claims except for her sex and age discrimination claims, stating that "[t]hese claims might fail on summary judgment, but at this point they should not be dismissed." O'Regan v. Arbitration Forums, Inc., 121 F.3d 1060, 1065 (7th Cir. 1997). The case was remanded to the district court before Judge Harry D. Leinenweber.

While the case was pending with Judge Leinenweber, O'Regan learned from a newspaper article that Judge Leinenweber's wife, former U.S. Labor Secretary Lynn Martin, accepted a position with Mitsubishi as a consultant to review the adequacy of Mitsubishi's policies governing sex discrimination at its Normal, Illinois plant. According to the consulting contracts, Mitsubishi agreed to pay Martin over $2 million from 1996 through 1998. O'Regan also learned that Mitsubishi was a major client of the law firm of Keck, Mahin & Cate (KMC), which was the same law firm that represented AF in this case.

Based on these facts, O'Regan filed a motion to disqualify Judge Leinenweber, alleging that he made favorable rulings for AF (KMC's client) and against O'Regan to repay KMC for the firm's assistance in securing Martin's consulting contracts with Mitsubishi. The district court denied O'Regan's motion. O'Regan filed a mandamus petition with this court, which was denied without opinion on December 8, 1997. O'Regan next filed an amended mandamus petition and requested a rehearing en banc, which this court denied on January 20, 1998.

O'Regan then filed a motion for default against Weaver, AF's former president (who was terminated in 1995 but was named as a defendant in her corporate capacity) for failing to file her answer to O'Regan's Second Amended Complaint. The district court denied the motion. O'Regan

subsequently filed a motion for reconsideration, which was denied as well. O'Regan then filed another mandamus petition, arguing that Judge Leinenweber's denial of the default motion, and his conduct at the motion hearing, further demonstrated the judge's bias. Another panel of this court denied O'Regan's second mandamus petition without opinion on May 11, 1998.

Back with the district court, AF and O'Regan filed cross-motions for summary judgment on O'Regan's remaining sex and age discrimination claims. Both parties also filed motions to strike in response to Local Rule 12(M) and (N) submissions. On August 30, 1999, the district court granted AF's summary judgment motion, concluding that O'Regan failed to establish that AF's reason for her termination (her failure to sign the employment agreement) was a pretext for discrimination, or that the employment agreement had an illegal disparate impact on women. O'Regan v. Arbitration Forums, Inc., No. 95 C 6464, 1999 WL 731775 (N.D. Ill., Aug. 30, 1999). The district court also granted in part AF's motion to strike portions of affidavits by O'Regan and Nancy Trussel (AF's Director of Human Resources), and denied O'Regan's motion to strike AF's reply to O'Regan's 12(N) statement of additional facts in support of her motion for summary judgment.

O'Regan appeals, arguing that Judge Leinenweber erroneously granted AF's motion for summary judgment, granted in part AF's motion to strike, and denied O'Regan's motion to strike. O'Regan also contends that because of KMC's alleged assistance in securing Martin's contract with Mitsubishi, Judge Leinenweber erred in failing to recuse himself from the case as required by the spousal financial interest provision of 28 U.S.C. sec. 455 (b)(4), and other disqualification provisions. On February 2, 2000, O'Regan filed a subsequent appeal of the district court's decision to grant AF's amended bill of costs, arguing that the district court abused its discretion in granting the bill of costs because it was untimely and misleading. We consolidate the appeals.

II.
A. Summary Judgment

O'Regan argues on appeal that the district court erred in granting summary judgment for AF on O'Regan's sex and age discrimination claims. "We conduct de novo review of a district court's decision involving cross-motions for summary judgment," viewing all of the facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party. Ozlowski v. Henderson, 237 F.3d 837, 839 (7th Cir. 2001)

(quoting Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998)). Summary judgment is proper if the record demonstrates that "there is no genuine issue as to any material fact and that [a] moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." Hendricks-Robinson, 154 F.3d at 692.

## 1. Disparate treatment claim.

On appeal, O'Regan argues that AF's President, Yvonne Weaver, favored AF's younger, male, management trainees over AF's older female managers, and that Weaver used the employment agreement as a pretext to terminate O'Regan because she is an older woman, in violation of Title VII and the ADEA.

Title VII makes it unlawful for an employer to terminate an employee because of her sex, 42 U.S.C. sec. 2000e-2(a)(1), and the ADEA makes it unlawful for an employer to terminate an employee because of her age. 29 U.S.C. sec. 623(a). Because O'Regan has presented no direct evidence of discrimination,/1 her Title VII and ADEA claims proceed under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999). First, O'Regan must make a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) other, similarly situated employees who were not members of the protected class were treated more favorably. See Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012 (7th Cir. 2000); Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 561 (7th Cir. 1998). If O'Regan establishes a prima facie case, AF must then produce a legitimate, nondiscriminatory reason for her termination. Paluck, 221 F.3d at 1009. Then, in order for O'Regan to prevail, she must rebut AF's legitimate reason by presenting evidence that could enable the trier of fact to find that AF's reason is merely a pretext for discrimination. See id. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000).

In this appeal, AF does not challenge the district court's conclusion that O'Regan established a prima facie case of sex and age discrimination, which placed the burden on AF to produce a legitimate, nondiscriminatory reason

for O'Regan's termination. AF claims that because O'Regan refused to sign the employment agreement she was terminated. The burden thus remained with O'Regan to present evidence that AF used the employment agreement as a pretext for discrimination. In other words, she had to present evidence that would raise a genuine issue of material fact that would question the truth of AF's claim that she was fired because she refused to sign the employment agreement. See Paluck, 221 F.3d at 1013.

O'Regan argues that she presented sufficient evidence of pretext to avoid summary judgment. She first contends that the employment agreement was a pretext for discrimination because it was illegal, unconscionable, served to perpetuate AF's alleged monopoly, and served no legitimate business purpose. According to O'Regan, AF had no business interests that warranted protection. Also, the company already had confidentiality agreements in effect to protect any business interests. Finally, she claims the Agreement was an unreasonable restraint of trade that violated Illinois public policy.

O'Regan's attacks on the employment agreement itself do not create a triable issue of pretext. The fact that the Agreement may have been unnecessary, ineffective or unenforceable would, at most, indicate that AF made a bad business decision. But it does not demonstrate that Weaver implemented the Agreement to justify the firing of older women. As we have often said, we "do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination." Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 976 (7th Cir. 2000) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997)). "On the issue of pretext, our only concern is the honesty of the employer's explanation." O'Connor v. DePaul University, 123 F.3d 665, 671 (7th Cir. 1997). And there is no indication in the record that Weaver did not honestly believe that the Agreement would help to protect AF's confidential information. It is undisputed that AF was embroiled in a controversy with Resolute over AF's confidential information. The record clearly shows that after the Resolute controversy, Weaver and other AF personnel reviewed AF's policies and practices for ways to preserve and protect its proprietary interests. Thomas Steele represented AF in the Resolute dispute. In order to avoid such a dispute in the future, AF requested that Steele draft an employment agreement that provided comprehensive protection of AF's trade secrets and confidential business information. The record demonstrates that AF not only

consulted with Steele about the wording of the employment agreement, but also that Steele advised Weaver to terminate any employee who refused to sign it. There is no indication that Weaver used the employment agreement that Steele drafted for any reason other than to protect AF's business interests. Nothing points to any use of the Agreement or the signing requirement as a way to eliminate AF's older female employees. The employment agreement may have been unnecessary, ineffective and unenforceable, but Title VII and the ADEA do not prohibit AF from foolishly requiring it. See O'Connor, 123 F.3d at 670 (quoting Kralman v. Illinois Dep't of Veterans' Affairs, 23 F.3d 150, 156 (7th Cir. 1994)) ("[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere."); see also Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000) (even if the employer's reasons for not selecting the plaintiff "were mistaken, ill considered or foolish," as long as the employer honestly believed those reasons, pretext has not been shown [in a Title VII case]).

O'Regan's next pretext argument is that AF selectively enforced the employment agreement by allowing Weaver to keep her job as president even though she did not sign the Agreement. O'Regan points to nothing in the record that indicates whether or not Weaver signed the Agreement. But even if Weaver did not sign the Agreement, O'Regan's argument is unavailing because as AF's president, Weaver was one of a kind. She was superior to and thus not similarly situated to the other managers and professional level staff who were required to sign the Agreement. See Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 561 (7th Cir. 1998) (to show pretext (as well as the fourth element of a prima facie case) the inquiry remains the same: the plaintiff must show that similarly situated employees were treated more favorably than the plaintiff). Here, all similarly situated employees who refused to sign the Agreement were terminated./2 Although we are unable to determine, from the arguments presented, the ages and the gender of the 85 people required to sign the Agreement, it is clear that O'Regan has not identified anyone, male or female, regardless of age, who refused to sign the Agreement but was not fired.

Next, O'Regan contends that Weaver used the Agreement as a pretext to discriminate against older women because Weaver knew (from Nancy Trussel's warnings) that the Agreement would have a disparate impact on AF's older female managers./3 According to O'Regan, Weaver learned from Trussel that the Agreement would fall more

harshly "upon numerous AF female employees over 40 years old with limited professional skills other than those learned as AF claims administrators and claims processors." O'Regan further asserts that AF's older female managers "had more at risk by losing their jobs in both seniority at AF and difficulty in being rehired, than did the young, male management trainees, with minimal seniority and a business degree." To start with, these concerns for these potential non-signers who were less educated would likely not even apply to O'Regan. In addition to a college degree, she has a graduate degree in Management. Moreover, this argument defeats itself: If older women at AF would be more vulnerable than their younger male colleagues if they lost their present job, then it follows that the older women would be more inclined to sign the employment agreement to preserve their jobs than the younger men who had less at stake at AF and were better positioned to compete for work outside of AF. If other job opportunities were limited, signing the Agreement would be less punitive since they wouldn't want to leave anyway.

Finally, O'Regan claims that she creates a triable issue of pretext with evidence indicating that Weaver made other hiring and promotion decisions that favored younger men over older women. But this evidence characterizing other decisions by Weaver as discriminatory has very little to do with Weaver's decision to implement an employment agreement that applied to all employees equally, and thus it is not sufficient to support an inference of pretext. Moreover, the record amply demonstrates that Weaver honestly (and perhaps naively) believed that the Agreement was necessary to protect AF's confidential information. We conclude, therefore, that because O'Regan has not presented sufficient evidence to establish a genuine issue of pretext, her disparate treatment claim fails.


2. Disparate impact claim.

Alternatively, O'Regan argues that her termination violated the ADEA and Title VII because the employment agreement had a disparate impact on older women who were less inclined to sign it because they "had more at risk by losing their jobs in both seniority at AF and difficulty in being rehired" than their younger male counterparts. While the ADEA does not permit disparate impact claims, Salvato v. Illinois Dep't. of Human Rights, 155 F.3d 922, 926 (7th Cir. 1998), such claims are valid under Title VII. Specifically, Title VII prohibits "employment practices that are facially neutral

in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Beard v. Whitley County REMC, 840 F.2d 405, 408-09 (7th Cir. 1988) (quoting International Broth. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)). Therefore, pursuant to Title VII, O'Regan can at least assert that the employment agreement had a disparate impact on women (regardless of age).

Contrary to O'Regan's position, AF's decision to require managers to sign the employment agreement did not have a disparate impact on women. Rather, the policy had the same impact on male and female professionals. If they did not sign the Agreement, they would be terminated, whether they were men or women. Other than the fact that O'Regan and three other women did not sign, O'Regan does not present any evidence to show that the employment agreement fell more harshly on women. While the parties do not point to any record evidence that shows how many women signed the Agreement, the record implies that a significant number did./4 The fact that four women did not accept the terms of the Agreement is not disparate impact.

3. Motions to strike.

O'Regan's next argument on appeal is that the district court erroneously granted in part AF's motion to strike statements made in affidavits by O'Regan and Trussel that purport to characterize Weaver's general hiring, employment and termination practices as discriminatory. "We review a trial judge's decision to strike parts of an affidavit in opposition to a motion for summary judgment for abuse of discretion," Adusumilli v. City of Chicago, 164 F.3d 353, 359 (7th Cir. 1998), which means that decisions "that are reasonable, i.e., not arbitrary, will not be questioned." Id. (quoting Whitted v. General Motors Corp., 58 F.3d 1200, 1203 (7th Cir. 1995)). And even if the district court "parsed the affidavits too aggressively," Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998), that error is harmless if the stricken evidence was insufficient to support a genuine issue of material fact for trial. See id. Affidavits must be based on personal knowledge, Fed. R. Civ. P. 56(e), and "[s]tatements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant" to an inquiry of discrimination. Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 397 (7th Cir. 1997).

In this case, the district court struck

Trussel's "speculations regarding Weaver's thoughts" and "O'Regan's citations to her complaint to the extent they are not supported by independent, substantiated facts." These decisions are based on accurate statements of the law. And while the district court would have aided our review by specifically identifying the stricken statements, that omission was harmless because O'Regan has not presented any facts in the affidavits that would have supported her claim that AF used the employment agreement as a pretext for discrimination. See Abioye, 164 F.3d at 368.

O'Regan also argues that the district court erroneously denied her motion to strike AF's Local Rule 12(M)/5 reply to O'Regan's Local Rule 12(N)/6 statement of additional facts opposing AF's motion for summary judgment. "The Local Rules of the Northern District of Illinois impose certain requirements for supporting and opposing motions for summary judgment." Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 527 (7th Cir. 2000). These provisions of Rule 12 instruct the parties to support their summary judgment motions (and their responses to those motions) with statements of material facts and specific references to affidavits and parts of the record that support the statements.

"We review the district court's rulings on Rule 12(N) statements for an abuse of discretion." Borderlon, 233 F.3d at 528. And the district court has the discretion to enforce 12(N) "strictly or somewhat leniently." Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992).

In this effort to comply with the local rules, the parties were not lost for words. AF filed a summary judgment motion along with a 67-paragraph statement of material facts under 12(M). O'Regan also moved for summary judgment along with a 193-paragraph 12(M) statement. But she also responded to AF's summary judgment motion with a 12(N) response that contained an additional 220 paragraphs of "facts." In its answer to O'Regan's 12(N) statement, AF objected to many of O'Regan's additional 220 paragraphs. O'Regan then moved to strike AF's reply, alleging that AF did not comply with the rules because its reply lacked specific references to the record. The district court denied O'Regan's motion to strike.

We conclude that the district court did not abuse its discretion because Rules 12(M) and (N) apply to statements of material facts, and O'Regan has not identified for this court any specific facts contained in her 220-paragraph response that are material to her case. By not

identifying any material facts to this court that would have required the denial of summary judgment, any claimed error in the denial of the motion to strike is harmless. And we certainly have no obligation to double-check this failure by scouring "the record to unearth material factual disputes." Carter v. American Oil Co., 139 F.3d 1158, 1163 (7th Cir. 1998).

B.  Disqualification Claims

O'Regan's next argument on appeal is that Judge Leinenweber was required to recuse himself from this case based on 28 U.S.C. sec.sec. 455(b)(4), 455(b)(1), 455(a), and 144. Because appellate review of a Section 455(a) claim is only possible by a pretrial mandamus petition, we cannot review that claim. United States v. Boyd, 208 F.3d 638, 645 (7th Cir. 2000). We review de novo the district court's decision to deny the other disqualification claims under Sections 455(b)(4), 455(b)(1), and 144. Hook v. McDade, 89 F.3d 350, 353-54 (7th Cir. 1996).

O'Regan first contends that Judge Leinenweber had a financial interest in the lawsuit and should have recused himself pursuant to 28 U.S.C. sec. 455(b)(4). Section 455(b)(4) requires a federal judge to disqualify himself from a case if "[h]e knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. sec. 455(b)(4).

O'Regan's perceptions of a financial or other interest are attenuated to say the least. She claims that Judge Leinenweber issued favorable rulings for AF in order to repay Keck, Mahin & Cate (KMC) (the law firm that represented AF before the firm went bankrupt in September 1997) for recommending his wife, Lynn Martin, to Mitsubishi (another KMC client) so that Martin could secure lucrative consulting contracts with Mitsubishi from 1996 through 1998. Thus, according to O'Regan, Section 455(b)(4) mandated Judge Leinenweber's recusal because he had a financial interest in the case: his wife's consulting contract with Mitsubishi.

This claim has no foundation in law or in fact. O'Regan provides no evidence that Judge Leinenweber or Lynn Martin had a financial interest in her case against AF. Martin had a financial interest in Mitsubishi, not in KMC, and Mitsubishi was not a party to this case. Additionally, O'Regan has provided no evidence that KMC recommended Martin to Mitsubishi, or that Martin, as the former Secretary of Labor,

needed KMC's recommendation to convince Mitsubishi to hire her to review the company's policies governing workplace discrimination after Mitsubishi became embroiled in well-publicized discrimination litigation. Moreover, Judge Leinenweber granted AF's summary judgment motion on O'Regan's remaining claims on August 30, 1999, almost two years after KMC went bankrupt, and well after Martin's consulting contract (Judge Leinenweber's alleged financial interest) expired. These facts certainly do not warrant recusal.

O'Regan also argues that Judge Leinenweber should have recused himself pursuant to 28 U.S.C. sec. 455(a). Section 455(a) requires recusal if the judge's impartiality might reasonably be questioned by a "well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." Hook, 89 F.3d at 354 (quoting Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990)). It is well established in this circuit that appellate review of a judge's refusal to disqualify himself under Section 455(a) "is possible only by petitioning the appellate court for mandamus before trial." Boyd, 208 F.3d at 645. Because another panel has already denied this claim in O'Regan's mandamus petition, and we have no reason to believe that the panel applied the incorrect standard, we cannot revisit the issue. See id. at 646.

O'Regan's remaining claims of actual bias under Sections 455(b)(1) and 144 are also unavailing. Section 455(b)(1) requires recusal only if "actual bias or prejudice is 'proved by compelling evidence.'" See Hook, 89 F.3d at 355 (quoting United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985)). And a judge's bias against a litigant must "arise from an extrajudicial source." Hook, 89 F.3d at 355. Because O'Regan has not demonstrated that Judge Leinenweber has a financial interest in this case, she has presented no extrajudicial source of bias, and this claim comes to naught.

Section 144 does require a judge to recuse himself if a party files an affidavit that the judge has "a personal bias or prejudice" against a party. Balistrieri, 779 F.2d at 1199. But we will only credit facts in an affidavit that are "sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." Boyd, 208 F.3d at 647 (quoting United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993)). Precisely because O'Regan only asserted simple conclusions (with no facts) establishing a connection between Martin and KMC in her affidavit, Section 144 is inapplicable as

well./7 See Boyd, 208 F.3d at 647.

C.  Bill of Costs

In this consolidated appeal, O'Regan also contends that Judge Leinenweber abused his discretion when he granted AF's amended bill of costs in the amount of $7,362.25./8 We review the district court's award of costs for abuse of discretion. Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 453 (7th Cir. 1998). The "award of costs is the type of discretionary ruling to which we give 'virtually complete' deference." Manley v. City of Chicago, 236 F.3d 392 (7th Cir. 2001) (quoting Estate of Borst v. O'Brien, 979 F.2d 511, 517 (7th Cir. 1992)).

O'Regan first contends that the district court abused its discretion in failing to strike AF's entire bill of costs because AF filed it after the deadline. AF also failed to file a proper motion to extend the deadline because it didn't file a notice of motion as required by the local rules. However, AF requested an extension of the filing deadline before it passed, and the district court had the discretion, pursuant to Fed. R. Civ. P. 6(b)(1), to grant AF's request "with or without motion or notice." Fed. R. Civ. P. 6(b)(1); see Lujan v. National Wildlife Federation, 497 U.S. 871, 896 n. 5 (1990).

O'Regan also claims that when AF reaffirmed its request (in its amended bill of costs) for the costs of original transcripts of three depositions after O'Regan had already pointed out that AF received copies (not originals) of those transcripts that are billed at a lower rate (than the originals), AF's counsel committed professional misconduct which the district court should have punished by denying AF's entire amended bill of costs. We first note that after O'Regan identified the billing error during the hearing on her motion to alter or amend the district court's judgment awarding $7885.90 in costs to AF, the district court reduced AF's amended bill of costs in the amount of $523.65 to accurately reflect the fact that AF received copies (not originals) of three deposition transcripts. So O'Regan got the relief that she initially requested. The district court declined to make any findings of fact on O'Regan's professional misconduct claim after the court heard AF's counsel acknowledge the error and explain that it was simply based on a misunderstanding about the appropriate charges of three transcripts out of some twenty-six transcripts involved in this case. We see no error in the district court's decision.

III.

The district court properly granted AF's motion for summary judgment because O'Regan failed to present sufficient evidence to support a triable issue of fact that AF used the employment agreement as a pretext to discriminate against O'Regan, or that the Agreement had a disparate impact on female managers at AF. Additionally, the district court's decisions involving the parties' motions to strike did not involve an abuse of discretion, or, alternatively, only involved harmless error. Furthermore, Judge Leinenweber properly denied O'Regan's disqualification motions because O'Regan failed to present facts establishing that the judge had a financial interest in the litigation, or that the judge's alleged financial interest created the appearance of impropriety. And the district court did not abuse its discretion in granting AF's amended bill of costs. Accordingly, we AFFIRM all of the decisions of the district court.

/1 The district court found that O'Regan presented no direct evidence of discrimination, and because O'Regan did not dispute that finding until her reply brief, her argument is waived. See United States v. Turner, 203 F.3d 1010, 1019 (7th Cir. 2000).

/2 Although AF has not challenged it, we note that because O'Regan does not show that any employees who refused to sign the Agreement were treated more favorably (i.e. were not terminated), O'Regan appears not to have made a prima facie case of discrimination. See Paluck, 221 F.3d at 1012.

/3 As discussed in Part II, A.2 below, in this circuit at least, the ADEA does not permit disparate impact claims. Salvato v. Illinois Dep't. of Human Rights, 155 F.3d 922, 926 (7th Cir. 1998).

/4 Out of the 85 management level and professional employees who received the employment agreement, four refused to sign it, and all four of them are women. And according to O'Regan, all 15 male managers and management trainees signed the employment agreement. Thus, the record implies that a substantial number of women (perhaps more than 60) also signed the employment agreement.

/5 This rule has been reclassified as Local Rule 56.1(a).

/6 This rule has been reclassified as Local Rule 56.1(b).

/7 O'Regan also claims that further evidence of

Judge Leinenweber's bias was his denial of O'Regan's default judgment motion against Weaver (who was named as a defendant in her corporate capacity and failed to file an Answer to O'Regan's Second Amended Complaint), and the judge's allegedly biased conduct during the motion hearing. But O'Regan has acknowledged that whether Weaver could have been named as a defendant in this case is an open question in this circuit, see Sattar v. Motorola, Inc., 138 F.3d 1164, 1168 (7th Cir. 1998), and thus there was no abuse of discretion. Because O'Regan has not demonstrated an extrajudicial source of bias, we see no basis for disqualification.

/8 O'Regan also claims that Judge Leinenweber's decisions on this issue constitute further evidence of bias and violations of 28 U.S.C. sec.sec. 455(a) and 455(b)(1). We cannot address the 455(a) claim. See Boyd, 208 F.3d at 646. Moreover, because we see no error in the judge's rulings on this issue, and O'Regan has presented no facts supporting an extrajudicial source of bias to support her claim, it loses. See Hook, 89 F.3d at 355.