JOURNAL ENTRY and OPINION
Defendant Commerce Group Benefits, Inc. is the claims administrator for the South Lorain Merchants Health Plan. In that capacity, Commerce Group Benefits conducts preadmission reviews of hospitalized patients. When plaintiff Cleveland Clinic Foundation twice admitted patient Patricia Williams, a member of the South Lorain Merchants Health Plan, through its emergency room for treatment of pulmonary problems, it contacted Commerce Group Benefits for verification of coverage. Both times, the Clinic was incorrectly told that the patient was insured. It turns out that the patient had preexisting pulmonary conditions that were excluded from health insurance coverage. The Clinic brought this negligence action against Commerce Group Benefits, claiming it negligently misrepresented that the patient had health insurance coverage for the hospitalizations. As damages, the Clinic sought the total cost of the patient's hospitalizations. Both sides asked for summary judgment. The court denied Commerce Group Benefits' motion and granted the Clinic's motion and awarded damages of $88,863.97.
The facts will be construed most strongly to Commerce Group Benefits, the party opposing summary judgment. See Civ.R. 56(C). The South Lorain Merchants Health Plan used Commerce Group Benefits to administer its health plan. South Lorain Merchants Health Plan requires precertification of hospital stays. In a typical case, a hospital admitting a patient would contact the health insurer to determine the necessity of the patient's hospital stay. Commerce Group Benefits farmed this task out to a company called Claims Management. Another aspect of hospitalization requires a verification of benefits. Commerce Group Benefits retained this task for itself. In its correspondence with hospitals, Commerce Group Benefits made clear that it could only issue a statement of coverage, not a guarantee of payment.
Patient Patricia Williams had COBRA health care coverage with the South Lorain Merchants Health Plan. When making her application to the health plan, she acknowledged the existence of preexisting pulmonary conditions. These preexisting conditions were excluded from health care coverage.
On two separate occasions, in February and March 1998, the Clinic admitted Williams on an emergency basis. Both times, the circumstances of Williams' admission were such that the Clinic could not make the preadmission inquiries until several days after Williams had been admitted. The Clinic first contacted Commerce Group Benefits to verify benefits and inquire whether the patient needed precertification of benefits. Commerce Group Benefits instructed the Clinic to call Claims Management on both occasions for precertification, and Claims Management twice completed an admission certification form and sent that form to Commerce Group Benefits. The Clinic's records show that it verified Williams' benefits.
Commerce Group Benefits did not notify the Clinic that Williams would not be covered for a preexisting condition until after all services had been rendered — Williams died during the second hospitalization. It is undisputed that Commerce Group Benefits knew that the conditions leading to Williams' hospitalizations were excluded from coverage under the South Lorain Merchants Association health plan because it had records showing that it had previously denied Williams' request for payment of medication related to her pulmonary condition on grounds that her pulmonary problems were preexisting conditions that were not covered by her health insurance policy. Claims Management did not have this information at the time of Williams' admissions. A representative of Commerce Group Benefits admitted that her file contained enough information to tell her that Williams' claims should have been rejected as non-qualifying under the policy.
Commerce Group Benefits first filed a motion for summary judgment, arguing that the Clinic could not demonstrate any damages from an alleged breach of care relating to precertification procedures gone awry. Because the Clinic conceded that Williams' condition in the emergency room required her immediate hospitalization, Commerce Group Benefits maintained that the Clinic could show no damages since it would not have turned her away even if it knew that her conditions would be excluded from insurance coverage. The motion was denied.
The Clinic then filed its own motion for summary judgment, arguing that the evidence showed Commerce Group Benefits knew that Williams would not be covered under the terms of the health plan, so it was entitled to judgment as a matter of law. Commerce Group Benefits denied having knowledge of Williams' condition, and submitted the affidavit of one of its employees to that effect. The Clinic immediately asked the court to strike the employee's affidavit on grounds that it flatly contradicted her deposition testimony. The court granted the motion to strike, and then granted the Clinic's motion for summary judgment on grounds that once the employee's affidavit had been stricken, Commerce Group Benefits could not muster an issue of material fact.
 I
The logical starting point for our review is the court's decision to strike the employee's affidavit on grounds that it contradicted her deposition testimony. We do so because the court made it clear that the absence of the employee's affidavit precluded any finding that there was a genuine issue of material fact.
Summary judgment may be granted only upon a showing that there is no genuine issue as to any material fact. See Civ.R. 56(C). InTurner v. Turner (1993), 67 Ohio St.3d 337, the first paragraph of the syllabus states:
 When a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact.
But Turner cannot be interpreted to suggest that the courts ignore the use of the word genuine within Civ.R. 56(C). We are obligated to give the words used in statutes and rules their ordinary meaning. See R.C. 1.41
and 1.42. The word "genuine" means sincere or void of dishonesty. The use of the word means that parties opposing summary judgment are not permitted to manufacture issues of fact by contradicting their own evidence. We have reconciled Turner with the explicit language of Civ.R. 56(C) by looking to see whether evidentiary inconsistencies in summary judgment motions and oppositions are explicit. See McCullough v. SpitzerMotor Center, Inc. (Jan. 27, 1994), Cuyahoga App. No. 64456, unreported.[1] As with all other matters involving the admission of evidence, we review the court's decision to strike the employee's affidavit for an abuse of discretion. O'Regan v. Arbitration Forums,Inc. (C.A.7, 2001), 246 F.3d 975, 986 (reviewing district court's decision to strike parts of an affidavit for abuse of discretion).
The crux of Commerce Group Benefits' arguments in opposition to the Clinic's motion for summary judgment, and supported entirely by Wallace's affidavit, was that there was a difference between precertification (the necessity for any hospital admission) and the verification of benefits. Wallace stated that "[t]he pre-certification (sic.) process has nothing to do with whether insurance benefits are available for a specific treatment performed on a patient." Wallace Aff. at paragraph 6. Commerce Group Benefits maintained that it hired Claims Management to conduct precertification only. Matters involving the verification of benefits were handled exclusively by Commerce Group Benefits. Id., at paragraph 10. Commerce Group Benefits argued that the Clinic only asked for precertification of Williams' admission, but did not specifically contact Commerce Group Benefits for verification of benefits. Wallace very clearly made this point by stating that "[n]o calls were received by Commerce Group Benefits, Inc. from the Cleveland Clinic for verification of benefits of Patricia Williams." Id., at paragraph 11.
While Wallace's deposition made the same distinction between precertification and verification of benefits, her deposition testimony did not indicate that precertification and verification of benefits occurred in two separate stages. She testified that at the same time a hospital asked for precertification, "there probably was" a verification of benefits. Wallace was unable to locate telephone logs that might prove whether Commerce Group Benefits spoke directly with the Clinic about verification of benefits, but agreed that there was telephone communication between Commerce Group Benefits and the Clinic because she had the precertification document from Claims Management.
We see no way to reconcile the discrepancies between Wallace's deposition testimony and her subsequent affidavit and therefore cannot find that the court abused its discretion by striking her affidavit. We can agree that Wallace's deposition admittedly did not go so far as to say with all certainty that the Clinic contacted Commerce Group Benefits. But if her statements did not rise to the level of certainty, they were nonetheless made with a firmness that would permit no reasonable dispute as to whether the Clinic contacted Commerce Group Benefits. Exercising the broad discretion permitted to trial judges, the court could rationally find that Wallace's affidavit contradicted her deposition testimony.
To underscore this point, it bears noting that Commerce Group Benefits itself appeared to harbor no reservations about Wallace's deposition testimony at the time it filed its motion for summary judgment. In that motion, Commerce Group Benefits set forth the facts relevant to Williams' first hospital admission and stated, "The hospital then contacted the defendant, Commerce Group Benefits, Inc., in order to verify insurance coverage." See Motion for Summary Judgment of Commerce Group Benefits, Inc., at 1-2 (emphasis added). As for Williams' March admission, Commerce Group Benefits went on to state, "The Cleveland Clinic again contacted Commerce Group Benefits, Inc., to verify insurance coverage." Id. at 2.
The court could rationally view Commerce Group Benefits' late decision to counter Wallace's deposition testimony with an affidavit that contradicted relevant portions of the testimony as self-serving under the circumstances — and completely lacking in credibility. The affidavit also constituted a major shift in how Commerce Group Benefits proceeded with the case. Just as a person may not submit an affidavit that contradicts or is inconsistent with earlier deposition testimony, parties cannot offer inconsistent legal arguments during summary judgment proceedings. See Cleveland v. Policy Sys. Mgmt. Corp. (1997), 526 U.S. 795,806. Commerce Group Benefits' motion for summary judgment contained a subject heading titled Facts and unmistakably told the court that the Clinic had contacted Commerce Group Benefits about Williams' benefits. The court did not abuse its discretion by finding that Commerce Group Benefits then completely contradicted that statement by submitting Wallace's affidavit to the effect that Commerce Group Benefits did not receive any calls from the Clinic. The evidentiary consistencies between Wallace's deposition and affidavit, and indeed between Commerce Group Benefits' motion for summary judgment and its opposition to the Clinic's motion for summary judgment, are explicit and direct.
The very deferential standard of review used on the admission of evidence means that we must affirm the court's decision to strike the affidavit unless that decision was "grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion or extreme bias." State v. Jenkins (1984), 15 Ohio St.3d 164,222. Commerce Group Benefits has failed to make that showing.
 II
Commerce Group Benefits next argues that the court erred when it granted the Clinic's motion for summary judgment because it ignored the briefing schedule it had established for the parties.
After Commerce Group Benefits filed its brief in opposition to the Clinic's motion for summary judgment, the Clinic asked the court for leave to file a reply to Commerce Group Benefits' brief in opposition, in addition to filing its motion to strike Wallace's affidavit. The court gave the Clinic until May 15, 2001 to file a reply brief, with Commerce Group Benefits' response, "if necessary," due on June 15, 2001. The Clinic filed both its reply brief and the motion to strike on May 15, 2001. The court granted the motion to strike the affidavit on June 5, 2001, and granted the Clinic's motion for summary judgment the following day, June 6, 2001. Commerce Group Benefits filed its response on June 15, 2001, pointing out to the court that the filing was timely under the briefing schedule established by the court. The court gave no response to Commerce Group Benefits' surreply, so Commerce Group Benefits was forced to appeal before the thirty-day time period for appeals expired.
Parties opposing motions for summary judgment are permitted thirty days in which to respond. See Loc.R. 11(I) of the Cuyahoga County Court of Common Pleas, General Division. Reply briefs to motions may not be filed except upon leave of the court, and only upon a showing of good cause. See Loc.R. 11(D) of the Cuyahoga County Court of Common Pleas, General Division.
When the court grants leave to file reply or additional briefs pursuant to Loc.R. 11(D), it can do so on its own terms. Nevertheless, the court must be held to those terms. In somewhat similar circumstances, we have held that the court errs by ruling on motions without first waiting for responses within scheduled time limits. See, e.g., City of Cleveland v.Laylle (Nov. 24, 1999), Cuyahoga App. No. 75196, unreported (court erred by ruling on motion to suppress before expiration of response time);Mackey v. Steve Barry Ford, Inc. (May 30, 1991), Cuyahoga App. No. 58681, unreported (court abused its discretion by "collaps[ing] the time for responses, without notice, after previously setting down a specific response time * * *.").
The court's order setting the terms of Commerce Group Benefits' response to the motion to strike Wallace's affidavit included the qualifying language "if necessary." We suppose the term "if necessary" could be taken one of two ways. It might refer to Commerce Group Benefits and mean that Commerce Group Benefits would only need to respond if Commerce Group Benefits thought a response was necessary. The language could also mean that the court reserved the right to itself to consider whether a response was necessary. The former seems more in keeping with typical court practice, although we cannot rule out completely the latter.
While the court did not consider Commerce Group Benefits' objections to the Clinic's motion to strike the affidavit, the Clinic's motion established by far reasonable grounds for striking the affidavit. Our prior discussion of the inconsistencies between Wallace's deposition testimony and her subsequent affidavit should make that point clear. Our independent review of those discrepancies yields no meaningful substantive basis for finding that the court erred, much less abused its discretion, by striking the affidavit without first considering Commerce Group Benefits' response. We therefore cannot say that the court abused its discretion, under these peculiar circumstances, by ruling on the motion to strike the affidavit without first waiting for Commerce Group Benefits' scheduled opposition.
 III
We now move to the substantive portion of the case Commerce Group Benefits' complaint that the court erred by granting the Clinic's motion for summary judgment on the negligent misrepresentation claim. The Clinic premised this claim on Commerce Group Benefits' negligent failure to inform the Clinic that Williams was excluded from coverage. Commerce Group Benefits argues that the Clinic failed to satisfy any of the three elements of a claim of negligent misrepresentation.
A claim for negligent misrepresentation is established by proof showing that one who, while acting in the course or a business in which one has a pecuniary interest, failed to exercise due care or competence and supplied false information for the guidance of others in a business transaction, and that the others justifiably relied on the information. See Delman v.City of Cleveland Heights (1989), 41 Ohio St.3d 1, 4. This standard necessarily defines the breach of care, and as with other claims of negligence, proximate causation and damages must be shown. See Mussivandv. David (1989), 45 Ohio St.3d 314, 318.
Commerce Group Benefits first argues that the Clinic failed to establish the existence of a false statement. It points out that the Clinic has no direct proof that Commerce Group Benefits made any statement regarding Williams being subject to a preexisting condition exclusion for benefits. Commerce Group Benefits goes on to argue that the only possible statement would have been made by Claims Management, and that liability could attach only upon a showing of agency between Commerce Group Benefits and Claims Management.
It is true that there is no direct proof that Commerce Group Benefits made any statement that verified Williams' benefits under her health coverage. Any records of conversations between the Clinic and Commerce Group Benefits were contained in telephone logs kept in Commerce Group Benefits' possession. Those logs could not be located.
Commerce Group Benefits admitted, however, that the Clinic contacted Commerce Group Benefits to verify Williams' benefits. We are aware that the nonmoving party in summary judgment proceedings is entitled to all reasonable inferences, Morris v. Ohio Cas. Ins. Co. (1988),35 Ohio St.3d 45, but it would be an unreasonable inference on this record to conclude that during that contact the Clinic did not receive verification of Williams' benefits. The Clinic gave uncontradicted proof that it had verified benefits with Commerce Group Benefits. The best Commerce Group Benefits could say was that it might have had a record of the conversation, but its employee could not find the precise location of the record. The Clinic's actions were entirely consistent with having received a verification of benefits, and nothing Commerce Group Benefits produced tended to diminish that fact. This point is reinforced by Commerce Group Benefits' admission that it knew in advance of Williams' hospitalization that her pulmonary problems were excluded from coverage. It defies sense to think that the Clinic admittedly contacted Commerce Group Benefits for a verification of benefits, that Commerce Group Benefits admittedly knew that Williams had a preexisting condition that excluded her benefits, the Clinic's records admittedly show that it called and received a verification of benefits, yet Commerce Group Benefits cannot be deemed to have made any verification of benefits to the Clinic because there is no direct proof (proof that would reside solely with Commerce Group Benefits) that Commerce Group Benefits did verify the benefits.
The second element of a negligent misrepresentation claim is justifiable reliance. Commerce Group Benefits argues that the Clinic cannot show any reliance, much less that the reliance was justified, because it admitted that it took Williams in as an emergency patient and would not have turned her away even if it knew that she did not have insurance benefits that would pay for her hospitalization.
It is a poor argument to say that the Clinic did not alter its position in any way as a result of statements made by Commerce Group Benefits. Some hospitals, as recipients of federal Medicaid monies, are obligated to treat those who are present to hospital emergency rooms. In Hardy v.New York City Health and Hosp. Assn. (C.A.2, 1999), 164 F.3d 798, 792, the Second Circuit Court of Appeals summarized the relevant law:
 In 1986, Congress enacted the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The purpose of EMTALA is to prevent "`patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." Power v. Arlington Hosp. Ass'n., 42 F.3d 851, 856 (4th Cir. 1994); see Bryan v. Rectors and Visitors of the Univ. of Virginia, 95 F.3d 349, 351 (4th Cir. 1996); Correa v. Hospital San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995); see also H.R. Rep. No. 241, 99th Cong., 1st Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 605, 726-27.
 EMTALA, which applies to all hospitals that participate in the federal Medicare program, imposes two primary obligations on those hospitals. First, when an individual shows up for treatment at a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition" exists. 42 U.S.C. § 1395dd(a). Second, if the screening examination indicates that an emergency medical condition does exist, the hospital ordinarily must "stabilize the medical condition" before transferring or discharging the patient. Id. § 1395dd(b)(1)(A).
The record does not show that the Clinic participated in the Medicare program, although it would be the rare major hospital that does not. If that were the case, the Clinic would not have been able to move Williams.
But regardless of the duty to keep Williams, the Clinic was not in a position to consider available alternatives because it relied upon Commerce Group Benefits' representations that Williams had health coverage. Had Commerce Group Benefits not made any representation that Williams was entitled to benefits, the Clinic could have waited until she stabilized and transferred her to another facility. It could also have asked her to pursue some form of public assistance to cover the cost of hospitalization.
We likewise reject Commerce Group Benefits' argument that the Clinic could not have relied upon any statements by Commerce Group Benefits as being a guarantee of payment. Commerce Group Benefits' claims that it informed the Clinic that certification of medical procedures does not guarantee payment. We must accept this fact as true for purposes of summary judgment.
We question how Commerce Group Benefits can admit that it has the authority to precertify claims and benefits, yet argue it cannot be held accountable since it does not make the final decision on issues of payment. This would render the entire precertification procedure a nullity. We agree with the Clinic that regardless of whether Commerce Group Benefits had final authority to authorize payment of medical claims, Commerce Group Benefits knew that the Clinic would act in reliance upon any verification of benefits. And Commerce Group Benefits knew at the time the Clinic contacted Commerce Group Benefits that Williams was not entitled to benefits. Commerce Group Benefits had every reason to think that the Clinic would rely on a verification of benefits, and the facts show that the Clinic did rely on the representation of benefits.
The final element of the misrepresentation claim is pecuniary loss. Commerce Group Benefits argues that the Clinic cannot show damages because it cannot prove that it would have received any payment for Williams' hospitalization since her preexisting condition excluded her from coverage.
All agree that Williams was excluded from coverage. That is not the point. The point is that Commerce Group Benefits negligently misrepresented to the Clinic that Williams did have benefits, and the Clinic continued to treat Williams in reliance on that representation of benefits. It is a classic example of misrepresentation where one acts in reliance upon the statements of another, when the other should know that the reliance is sure to follow from the statement. The Clinic acted because Commerce Group Benefits falsely verified Williams' benefits. The Clinic's damages were manifest.
Reasonable minds could only find that the Clinic established all the elements of negligent misrepresentation. The court did not err by granting summary judgment. The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS. ANNE L. KILBANE, J., CONCURS IN JUDGMENTONLY.
[1] It may be that we no longer need to reconcile Turner, as in another type of civil case, the Ohio Supreme Court has indicated that the courts may consider the credibility of affidavits and other supporting evidence in motions for postconviction relief filed under R.C. 2953.21. In Statev. Calhoun (1999), 86 Ohio St.3d 279, 283, the Supreme Court acknowledged that a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition for postconviction relief, but could, in the sound exercise of discretion, judge the credibility of those affidavits by "determining whether to accept the affidavits as true statements of fact." Admittedly, the Court made this finding within the constraints of a specific statute that allowed the lower courts discretion in holding evidentiary hearings on petitions for postconviction relief, but Calhoun does arguably chip away at Turner's
veneer and brings the Supreme Court more in line with the vast majority of courts that will scrutinize the sincerity of affidavits.