George C. HOOK, Petitioner,

v.

The Honorable Joe Billy McDADE, Judge, United States District Court for the Central District of Illinois, Respondent.

No. 95–2793.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1995.

Decided July 9, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 19, 1996.

George C. Hook (argued), Chicago, IL, Dolores M. Veninga, Chicago, IL, for Petitioner.

Bradley W. Murphy (argued), Gerard A. Brost, Office of the United States Attorney, Peoria, IL, for Respondent.

Before WOOD, Jr., COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

George C. Hook, an attorney, was indicted along with Carmen Viana, the owner of Wittek Industries, for stealing funds from the Wittek company's employee pension plan, in violation of 18 U.S.C. § 664; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. § 1956. Viana fled to Brazil and there is an outstanding warrant for her arrest, although according to the Assistant United States Attorney, extradition is unlikely. After the trial judge had denied a number of Hook's pretrial motions, Hook requested that the trial judge, the Hon. Joe B. McDade, recuse himself, pursuant to 28 U.S.C. § 455. After the district court denied the motion, the defendant Hook petitioned this court for a writ of mandamus to order the recusal of the district court judge. We deny the petition.

## I. BACKGROUND

The factual grounds that give rise to Hook's claim of judicial bias in his criminal trial arose from a civil lawsuit (the *Cannon* litigation) filed in 1993 before Judge McDade. In that suit, Holly Cannon, a former secretary of Wittek Industries (an automobile parts manufacturer in Peoria, Illinois) sued her former employer, as well as its owner, Carmen Viana, and the Blue Cross Blue Shield Health Plan, claiming that she had been improperly denied health benefits under the Employee Retirement Income Security Act of 1974 (ERISA). Carmen Viana, over the objection of her insurance company, Kemper (who provided insurance coverage for employee suits regarding benefits), retained attorney George Hook to defend the action. The district court (Judge McDade)

granted summary judgment for Wittek, Viana, and Blue Cross; the secretary appealed and Hook submitted a $10,000 legal bill to the insurance company.

The insurance company believed Hook's legal fees to be excessive, refused to pay the same, and in November 1994 Kemper Insurance retained the firm of Quinn, Johnston, Henderson, and Pretorius to review Hook's attorney's fees. One of the attorneys at the Quinn firm was Mary McDade, the wife of Judge McDade and she was assigned to review the legal charges. Upon the Quinn firm's recommendation, the insurance company paid only 75 percent of the bill and at this time Hook withdrew his representation for the appeal. According to Hook, Mary McDade, in the course of her review of Hook's legal bill, questioned whether Hook's termination of representation for Wittek and Viana during the time period when their appellate brief was due in the Seventh Circuit might be considered as and constitute legal malpractice.

In January 1995, prior to oral argument in *Cannon* before this court, Mary McDade withdrew as counsel for the defendants. Her firm, however, continued to represent Wittek and Viana on appeal.[1]

In February 1995, an indictment was returned against George Hook and Carmen Viana, Wittek's owner, alleging that from about June to September 1992, Hook and Viana transferred and embezzled funds from a pension plan sponsored by Wittek for its employees, in violation of 18 U.S.C. §§ 664 (theft from an employee benefit plan), 1343 (wire fraud), and 1956 (money laundering). Viana is believed to have fled to Brazil.

Prior to his arraignment on May 25, 1995, Hook filed a motion for a bill of particulars, a motion to transfer the case from the Central to the Northern District of Illinois, and a motion for discovery. On the day of his arraignment, Hook filed a motion to dismiss. At a hearing on June 29, 1995, Judge McDade denied Hook's motion to dismiss, as

---

1. This Court ultimately reversed the district court's summary judgment order, *Cannon v. Wittek*, 60 F.3d 1282 (7th Cir.1995).

well as his motion to transfer, stating that he thought Hook had exaggerated the expense of having to travel to Peoria from Chicago for the trial. The district court granted in part the defendant's motions for a bill of particulars and for discovery.

One week later, on July 7, 1995, Hook filed his motion requesting that Judge McDade recuse himself from Hook's case and vacate any orders previously issued, claiming that Judge McDade had been influenced by his wife's assessment of Hook's conduct in the *Cannon* litigation, and that there was an appearance of bias. On July 14, 1995, Judge McDade conducted a hearing on this motion and stated in part:

> [L]et me start off by saying I find the motion totally offensive and I consider it to impugn my integrity and [it is] unprofessional for a lawyer to knowingly make a false statement impugning the integrity of the judge ... you have not acted like an officer of the court in filing this motion.

Judge McDade then questioned Hook under oath. Hook stated that he felt there was an inherent conflict of interest because of Mary McDade's (Judge McDade's wife) representation of Viana, Hook's co-defendant, during the initial stages of the appeal of Judge McDade's grant of summary judgment to Viana and Wittek on a former employee's health insurance claim in *Cannon*. Hook further cited the fact that Mary McDade had questioned in conversation whether Hook, who had represented Viana (and Wittek) during the *Cannon* proceedings, might have exercised bad judgment and committed malpractice in withdrawing as counsel when an appellate brief was due in the Seventh Circuit on behalf of his clients. Hook went on to state that he was "aghast by" Judge McDade's ruling on his motions. After hearing Hook's version, Judge McDade replied that Hook's motions were without merit. Hook also asserted on the record that he believed that Judge McDade gave his argu-

ments "very short shrift" and further complained that the court had denied him the opportunity to file replies to the government's responses to his motions. Following this colloquy, Judge McDade denied Hook's motion to disqualify himself as the presiding judge and the accompanying motion to vacate his orders.

On July 31, 1995, on the date that his trial was to begin, Hook filed the instant petition for a writ of mandamus with this court, requesting that we order Judge McDade to disqualify himself from the case.

## II. DISCUSSION

Hook argues that section 455 of Chapter 28 of the United States Code mandates that Judge McDade disqualify himself from Hook's trial. That section provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > . . .
> >
> > (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455.

▮▮▮▮▮▮ The district court judge refused to disqualify himself; Hook has petitioned this court to issue a writ of mandamus to order the judge disqualified.[2] Our review of the petition is de novo. *Taylor v. O'Grady*, 888

---

2. A petition for a writ of mandamus is an extraordinary remedy, but the only recourse available to challenge a judge's denial of a motion for disqualification under 28 U.S.C. § 455. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117–18 (7th Cir.1977) (granting writ of mandamus to disqualify district court judge under 28 U.S.C. § 455(b));

*United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986) (granting petition for writ to disqualify district court judge under 28 U.S.C. § 455(a)). *United States v. Towns*, 913 F.2d 434, 443 (7th Cir.1990) (collecting cases).

F.2d 1189, 1201 (7th Cir.1989) (citing *Balistrieri*, 779 F.2d at 1201).[3] We will consider each applicable provision of section 455 in turn.

## A. Disqualification under 28 U.S.C. § 455(a)

 28 U.S.C. § 455(a) requires a federal judge to *"disqualify himself in any proceeding in which his impartiality might reasonably be questioned."* We have stated:

> Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988); *New York City Housing Develop. Co. v. Hart*, 796 F.2d 976 (7th Cir.1986); *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir.1985). An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person.... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

*In re Mason*, 916 F.2d 384, 385–86 (7th Cir. 1990).

 Hook argues that Mary McDade, the Judge's wife, formerly represented Carmen Viana, a co-defendant in Hook's criminal trial, and that fact raises the appearance of bias.

As a threshold matter, certainly we agree that a judge's spouse or close relation cannot appear as counsel in any trial or proceedings before that Judge. Further, the Judicial Code of Conduct directs a Judge should be disqualified if the law firm in which his or her spouse is a partner appears before the Judge. *See* Canon 3C(1) of the Judicial Code of Conduct (1994); Advisory Opinion No. 58 (1993). However, we emphasize that neither Mary McDade nor the Quinn firm has ever appeared before Judge McDade in any proceeding relating to the civil suit or the criminal case. The Quinn firm entered the *Cannon* litigation for the sole purpose of reviewing Hook's legal fees submitted to Kemper (Wittek and Viana's insurance company) and represented Viana's interests on appeal in the civil case only after George Hook withdrew from the case. The Quinn firm became involved in the case *after* Judge McDade had ruled, and the insurance company did not challenge the court's decision, but merely sought review of the legal fees that Hook presented to the insurance company for payment.

Further, the *Cannon* case has no bearing on Hook's criminal trial. The issue in *Cannon* was whether an employee had worked sufficient consecutive days at Wittek to qualify for Blue Cross coverage under the terms of Wittek's health insurance plan. In contrast, Hook has been indicted (along with Carmen Viana, Wittek's owner) for illegally transferring funds from Wittek's pension plan. The issues raised in the *Cannon* case concerning an employee's qualification for health insurance benefits are not related to and do not influence the criminal allegations that Hook and Viana stole from the Wittek pension fund. Neither Mary McDade nor the Quinn firm is involved in the criminal trial of Hook and Viana. Finally, Carmen Viana has fled to Brazil, and as far as this record recites she seems unlikely to be a participant in either the criminal trial or any further civil proceedings in *Cannon*.

---

3. We note that the Fifth and the Second Circuits review disqualification motions for an abuse of discretion. *See In re Billedeaux*, 972 F.2d 104, 106 (5th Cir.1992); *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312–13 (2nd Cir.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). However, dissenting opinions in both cases argue that the abuse of discretion standard is inappropriate for allegations of judicial bias. *Billedeaux*, 972 F.2d at 106–107 (DeMoss, J., dissenting); *Burnham*, 861 F.2d at 1321 (Lumbard, J., dissenting).

We fail to see how the involvement of Judge McDade's wife in an unrelated civil suit involving one of the same parties could lead to the appearance of an impartial criminal trial. From the facts in the record, we disagree with Hook that there is any bias that can reasonably be inferred from Mary McDade's involvement in the suit that would justify the disqualification of Judge McDade. *See Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1375 (7th Cir.1994) (en banc) (holding that recusal was not required in a murder trial on the ground that the judge had prosecuted the defendant for a different murder fourteen years earlier); *United States v. Barnes*, 909 F.2d 1059, 1072 (7th Cir.1990) (holding that bias alleged to have been caused by past cases (and the present case) in which the judge and litigant were involved was not grounds for the judge's disqualification).

### B. Disqualification Under 28 U.S.C. § 455(b)(1)

■ A federal judge must disqualify himself from a proceeding, "*[w]here he has a personal bias or prejudice concerning a party....*" 28 U.S.C. § 455(b)(1). In determining whether a judge must disqualify himself under 28 U.S.C. § 455(b)(1), "the question is whether a reasonable person would be convinced the judge was biased." *Lac du Flambeau Indians v. Stop Treaty Abuse–Wis.*, 991 F.2d 1249, 1255 (7th Cir.1993) (citing *Taylor*, 888 F.2d at 1201; *Balistrieri*, 779 F.2d at 1202). "The negative bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Balistrieri*, 779 F.2d at 1201. Moreover, recusal is required only if actual bias or prejudice is "proved by compelling evidence." *Id.* at 1202. Bias against a litigant must, however, arise from an extrajudicial source:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's efforts at courtroom administration—remain immune.

*Liteky v. United States*, 510 U.S. 540, ——, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). *See also United States v. Griffin*, 84 F.3d 820, 831 (7th Cir.1996).

■ In the present case, Hook's claim of bias is rooted in Judge McDade's rulings and comment that he found the disqualification motion offensive. Hook also cites the fact that Mary McDade questioned Hook's handling of the *Cannon* matter. According to Hook, Mary McDade's legal evaluation and suggestion of possible malpractice should be imputed to her husband, Judge McDade, and are therefore evidence of the judge's prejudice. Hook also argues that Judge McDade's pre-trial rulings, such as Hook's motion for a bill of particulars and motion to transfer the case from the Central to the Northern District of Illinois, demonstrate his prejudice against Hook.

As noted above, unless there are exceptional circumstances, judicial rulings are grounds for appeal, not disqualification. After scrutiny of the record, we find nothing in Judge McDade's rulings or comments that demonstrate an alleged extrajudicial personal prejudice against Hook. The judge stated that he considered Hook's motion for disqualification "offensive," and thought that it "impugn[ed]" his integrity. In addition, the judge, after reviewing Hook's motion for disqualification, directed Hook to testify about the alleged bias under oath because he believed that Hook had failed to act as an ethical member of the bar in filing the recusal motion. *See In re Kelly*, 808 F.2d 549, 552 (7th Cir.1986) (observing that "lawyers

who make statements to courts under oath concerning the conduct of fellow lawyers and judges and other participants in the administration of justice [must] be scrupulous regarding the accuracy of those statements."). While Judge McDade's remarks are critical of Hook, the Judge was reacting, albeit strongly, to a disqualification motion brought on the eve of trial concerning himself vis a vis his wife's participation in an unrelated trial, a motion that claimed that the Judge ruled against Hook's pre-trial motions based on personal prejudice. We can reasonably infer that the Judge's reaction (and surprise at the motion) demonstrates that he had no idea that Mary McDade had any prior involvement with either Viana or Hook. From our review of the transcript we do not believe that the Judge's comments in reaction to Hook's accusation of impartiality reflect a bias or prejudice gained from outside the courtroom that would lead a reasonable observer to conclude that McDade is incapable of ruling fairly in a case involving Hook. *See Liteky*, 510 U.S. at ——, 114 S.Ct. at 1157.[4] Judge McDade's comments in the present case are clearly not of this nature and thus are not grounds for recusal. *See Federal Trade Comm'n v. Amy Travel Svc., Inc.*, 875 F.2d 564 (7th Cir.), *cert. denied*, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989) (holding that friction between a judge and counsel was not grounds for disqualification); *In re Drexel Burnham*, 861 F.2d at 1316 (holding that sharp criticism of petitioner's counsel's behavior is not grounds to find personal bias).

## C. Disqualification Under 28 U.S.C. § 455(b)(4)

A federal judge is required to disqualify himself from a case, if *"[h]e knows that he . . . or his spouse . . . has a financial interest in the subject matter of the controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."* 28 U.S.C. § 455(b)(4). Financial interest is defined as "ownership of a legal or equitable interest, however small. . . ." 28 U.S.C. § 455(d)(4). However, "where an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham*, 861 F.2d at 1313. Hook argues that here that the judge's wife has a financial interest in the outcome of this case because her firm represents the insurance company of Carmen Viana, the absent co-defendant of Hook.

The Quinn law firm, of which Mary McDade is a partner, as a result of its representation of Viana's insurance company, did represent the financial interests of Carmen Viana in an appeal of a civil suit concerning health insurance. We fail to understand how Hook can allege that Judge McDade has a financial interest in the outcome of a criminal trial of Hook and Viana, whose issues have no relation to those raised in the civil case. As a threshold matter, Carmen Viana has fled the country and seems unlikely to participate in either the criminal trial or civil proceedings in the *Cannon* litigation. Secondly, Hook's conviction (or non-conviction) would not seem to alter in any tangible fashion the business relationship between the Quinn firm and the insurance company. Hook has not demonstrated, and we are hard-pressed to envisage, any financial interest of Mary McDade's that is directly affected by the criminal trial of George Hook. We fail to understand under what circumstance Judge McDade might conceivably have a financial interest in the subject matter in controversy or in a party involved in Hook's case. *See In re Drexel Burnham*, 861 F.2d at 1316–17 (holding that district court judge has no financial interest warranting disqualification where his wife stood to gain $30 million in leveraged buyout of her family's business financed in part by an investment bank that is a co-defendant in an insider trading law-

---

4. As an example of a remark that would indicate a level of hostility from which one could conclude that a judge was biased against a litigant, the *Liteky* court has put forth the comment of Judge Kenesaw Mountain Landis. Judge Landis stated in a World War I espionage case that " '[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.' " *Id.* (quoting *Berger v. United States*, 255 U.S. 22, 28, 41 S.Ct. 230, 231, 65 L.Ed. 481 (1921)).

suit brought by the Securities and Exchange Commission).

## III. CONCLUSION

After review, we hold that the record is devoid of any facts that would tend to demonstrate bias or an appearance of bias on the part of Judge McDade. However, in light of Hook's personal accusation against Judge McDade of bias, the judge might want to consider whether the remote possibility of the *appearance* of bias might exist as a result of this attack on his integrity. We repeat that we neither infer nor suggest that Judge McDade should recuse himself for the record reveals absolutely no evidence of even an appearance of personal bias; the decision lies clearly with the judge.

Hook's petition for a writ of mandamus is DENIED.