In the

# United States Court of Appeals

### For the Seventh Circuit

————

No. 09-2264

IN RE:

UNITED STATES OF AMERICA,

Petitioner.

————

Petition for Writ of Mandamus
from the Eastern District of Wisconsin.
No. 2:05-cr-00145-JPS-1--**J.P. Stadtmueller**, *Judge*.

————

JULY 10, 2009[*]

————

Before RIPPLE, ROVNER and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. The United States ("the Government") has filed this petition for a writ of mandamus seeking the recusal of the respondent district judge currently presiding over a criminal action pending in the United States District Court for the Eastern District of Wisconsin. Because the Government has established that a reasonable, well-informed observer might question the impartiality of the district

_____

[*] This opinion is being released initially in typescript form.

judge, we must grant the requested writ, disqualifying the judge from presiding over the proceeding and requiring that he vacate all orders entered since the filing of the recusal motion in the district court.

# I

## BACKGROUND

### A.

In January 2003, Rashid A. Salahuddin failed to return to a corrections facility while he was on work-release. Local authorities in Milwaukee, Wisconsin, obtained an escape warrant and searched for Mr. Salahuddin in the home of his estranged wife, where he may have been living at the time. During the course of the search, the officers discovered two guns in a bedroom closet, but they did not find Mr. Salahuddin. The next day, they returned, found Mr. Salahuddin and placed him under arrest. Before the officers were able to administer *Miranda* warnings, Mr. Salahuddin stated that there were two guns in the closet of the bedroom where the guns had been found the previous day.

Mr. Salahuddin was charged in state court with being a felon in possession of a firearm. Later that month, a state court commissioner dismissed the case for lack of probable cause on the ground that there was insufficient evidence connecting the guns to Mr. Salahuddin. The state appealed, arguing that Mr. Salahuddin's statement indicated an ability to possess the guns. The state court disagreed, however, and, in April 2003, affirmed the commissioner's dismissal of the case.

More than two years later, in June 2005, a federal grand jury indicted Mr. Salahuddin on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The case was assigned to

Judge Clevert. Shortly thereafter, the parties began plea negotiations. The assistant United States attorney prosecuting the case suggested in a letter to Mr. Salahuddin's attorney that Mr. Salahuddin would not qualify as an armed career criminal and therefore would not be subject to the fifteen-year mandatory minimum sentence. *See* 18 U.S.C. § 924(e)(1). According to the prosecutor's letter, Mr. Salahuddin's criminal history included juvenile convictions for resisting or obstructing an officer, receiving stolen property, possession of a controlled substance and three separate incidents of burglary. He also had adult convictions for armed robbery (for which he had been imprisoned for almost eight years), being a felon in possession of a firearm, carrying a concealed weapon, possession of marijuana and escape. The assistant United States attorney calculated Mr. Salahuddin's advisory guideline range as 46-57 months' imprisonment, but also advised Mr. Salahuddin that "the judge will ultimately decide the defendant's criminal history score." R.20, Att. 1.[1] Mr. Salahuddin elected to plead guilty. At the change of plea hearing, Mr. Salahuddin hesitated when the court explained that, by pleading guilty, he could no longer challenge the admissibility of the Government's evidence against him as the fruits of an unlawful search. Mr. Salahuddin decided at that time to plead not guilty. Judge Clevert set the matter for trial, but, only days later, Mr. Salahuddin again changed his mind and entered a guilty plea.

After the change of plea hearing, but shortly before the sentencing hearing, the Government altered its position and informed Mr. Salahuddin that it now believed he did qualify as an armed career criminal. Mr. Salahuddin then moved to withdraw his plea, which the Government opposed. Judge Clevert granted Mr. Salahuddin's motion

---

[1] Citations to the record are to the district court's docket available on CM/ECF. There is no record on appeal.

to withdraw his plea and, in the same order, recused himself from further participation in the case.

The matter was reassigned to Chief Judge Randa. Although the deadline for filing pretrial motions had expired, Mr. Salahuddin moved in March 2006 for leave to file instanter two motions to suppress both the guns and statements he allegedly had made. The motions were referred to Magistrate Judge Goodstein who, reasoning that the delay in filing the suppression motions resulted from the dispute over the applicability of the armed career criminal statute, concluded that "in the interests of justice" the motions should be entertained. R.39 at 3. The Government sought review of that order in the district court. Chief Judge Randa concluded in May 2006 that Mr. Salahuddin had not met the "good cause" requirement of Federal Rule of Criminal Procedure 12(e) and, therefore, reversed the magistrate judge's decision.[2]

After a two-day trial in August 2006, Mr. Salahuddin was convicted of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Mr. Salahuddin's post-trial motions for a judgment of acquittal and for a new trial were denied, and Chief Judge Randa sentenced him to 180 months' imprisonment; the sentence was the mandatory minimum for career criminals sentenced under 18 U.S.C. § 924(e) and also was below the advisory guidelines range.

Mr. Salahuddin appealed to this court. He argued that the district court should have entertained his motions to suppress. We agreed and

---

[2] Around the same time, the Government petitioned for Mr. Salahuddin's pretrial bond to be revoked. This matter was heard before Magistrate Judge Callahan, who agreed with the Government that Mr. Salahuddin's failure to return home, as required by the conditions of his release, necessitated the revocation of his bond. Mr. Salahuddin did not challenge the petition for detention, and he was remanded into custody.

held that it was "incongruous to permit a defendant to withdraw a guilty plea and go to trial while not permitting him to litigate the admissibility of significant evidence." *United States v. Salahuddin*, 509 F.3d 858, 862 (7th Cir. 2007). We remanded the case with instructions to hear the suppression motions and, if they were found to be meritorious, to order a new trial.

**B.**

On remand, the motions were referred to Magistrate Judge Goodstein, who recommended that the motions be denied in their entirety. Mr. Salahuddin objected to the magistrate judge's report and recommendation, and the Government filed a response. However, before the district court issued a ruling on the report and recommendation, Chief Judge Randa *sua sponte* recused himself under Circuit Rule 36.[3] The case was reassigned to the respondent district judge (hereinafter "the Judge").

---

[3] Circuit Rule 36 provides in relevant part: "Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case. . . ." Circuit Rule 36. It is not immediately clear whether this rule required Chief Judge Randa to recuse himself before ruling on the suppression motions. Although the rule requires cases remanded for new trials to be reassigned, this court's opinion only conditionally directed a new trial, which would be necessary only if the district court first concluded that Mr. Salahuddin's arguments were meritorious. Orders directing the district court to undertake further proceedings are routinely heard by the district judge who entered the order that was the subject of the appeal. Chief Judge Randa probably could have, consistent with Circuit Rule 36, heard the suppression motions and, if necessary, ordered the case reassigned if he concluded that a new trial was warranted.

The Judge reviewed the report and recommendation, and he called a meeting in chambers on October 9, 2008, with then-United States Attorney Steven M. Biskupic and Federal Defender Daniel W. Stiller. Assistant United States Attorney Gordon P. Giampietro and Associate Federal Defender Nancy Joseph, who were the attorneys actually litigating the case, were not invited. No court reporter was present, and no meeting minutes are reflected on the district court's docket. The Judge began by telling Mr. Biskupic and Mr. Stiller that he would not hear discussion, comment or response from either of them. According to the parties' submissions, the Judge then recounted the procedural history of the case and reminded the office heads that, before the confusion surrounding application of the armed career criminal statute, both parties had preferred to resolve the case with a plea bargain. The Judge also suggested that his pending ruling on the motions to suppress would not satisfy either party and recommended that they consult with the assigned attorneys to explore the possibility of resolving the case without additional litigation.

The Government adds that, in discussing the procedural history of the case, the Judge suggested that there was "an awful lot of blame to be spread around for what he considered to be a total breakdown of justice." Pet. 4. The Government states that the Judge mentioned the length of time that had passed between Mr. Salahuddin's arrest by state authorities and the commencement of his federal prosecution and questioned why the case was accepted for federal prosecution at all, given that the qualifying conviction for armed career criminal status was an armed robbery Mr. Salahuddin had committed while a juvenile (he had been waived into adult court). The Government further recites that the Judge said the case should be resolved without further litigation and that he recommended that the parties agree to a guilty plea to a false-statement count (which carries a ten-year statutory maximum, as opposed to the fifteen-year statutory minimum under § 924(e)), recognizing that Mr. Salahuddin would have to waive the statute of

limitations.[4]  The Government submits that the Judge suggested in the alternative that the case be sent back to state court.  Finally, the Government suggests that, although the Judge recognized that he should not be involved in plea negotiations, he opined that this was an "extremely rare" case that needed to be addressed "at the top"; that he was disturbed that there were 100 docket entries in a one-count gun case;[5] that if the case were to go forward there may be another appeal; that the case was "an embarrassment to the justice system;" and that he would recuse himself if requested. Pet. 5.  Neither the Judge nor Mr. Salahuddin challenges the accuracy of the Government's recitation of these additional facts.

Eleven days later, on October 20, 2008, the Government moved for the Judge's recusal pursuant to 28 U.S.C. § 455(a).  On January 5, 2009, the Government inquired as to the status of the case.  Three days later, the Judge issued an order adopting in part the report and recommendation of the magistrate judge.  He granted Mr. Salahuddin's motions to suppress statements, denied the motion to suppress the gun, ordered a new trial and denied the Government's motion for recusal. The portion of the order denying the recusal motion reads in its entirety:

> There remains but one additional matter - a recusal motion filed by the government.  The motion followed a joint meeting between the court and counsel for the parties as more fully detailed in an

---

[4] This account is corroborated by the Judge's order of April 10, 2009, which denied the Government's motion for reconsideration of its request for recusal.  *See* R.117 at 5 n.1. (stating that "the court thought it prudent to suggest an alternative disposition under an otherwise appropriate statute that would not trigger application of the enhancement").

[5] This concern also is corroborated by comments in the Judge's order of January 8, 2009, denying the Government's motion for recusal.  R.107 at 1.

earlier footnote. To be sure, on its face the motion represents nothing more than an ill-considered, poorly-disguised, preemptive collateral attack, albeit through the convenience of forum shopping, on the wisdom of the court's decision announced today. The motion is denied.

R.107 at 30-31. The earlier footnote explains that:

The court was prepared to issue its decision on *de novo* review of the magistrate's recommendations on October 10, 2008. As part of its review, the court took note of the troubling procedural history of this case and the ever-mounting commitment of limited prosecution, defense, and judicial resources that, when taken together, have become prohibitively expensive and certainly less cost effective to taxpayer interests. Thus, the confluence of these factors together with the interests of justice more than suggest that the court and counsel for the parties make a good faith effort toward resolution of the case without the necessity of further litigation. Toward that end, on October 9, 2008, the court met in chambers with the Federal Defender, Daniel Stiller, and the United States Attorney, Steven Biskupic, to explain that the court had completed its review of the magistrate's recommendation and, without further elaboration, indicated that neither side would be happy with the court ruling since litigation in the case would likely continue unabated. The court then provided counsel with additional relevant background facts leading to the court's recommendation that the parties explore potential alternatives to the current charge. The court concluded by stating that it would withhold release of today's ruling for a reasonable period of time so as to provide the parties with a safe harbor within which to consider an alternative disposition.

R.117 at 2 n.1.

Two weeks later, the Government filed a motion for reconsideration; it contended that the October 9, 2008 meeting violated Federal Rule of Criminal Procedure 11 and that the Judge's comments, both during the meeting and in his order, called into question his impartiality. At the final pretrial conference, the district court did not rule on the motion for reconsideration, but did invite the United States to respond to Mr. Salahuddin's waiver of recusal, which Mr. Salahuddin had filed in response to the Government's motion for reconsideration. The Government declined to do so on the ground that, under *In re National Union Fire Insurance Co.*, 839 F.2d 1226, 1231 (7th Cir. 1988), it was inappropriate for the court to solicit the parties' views on recusal.

The Judge denied the motion for reconsideration on April 10, 2009. He reasoned that he did not violate Federal Rule of Criminal Procedure 11 for three reasons: (1) Neither the Government nor Mr. Salahuddin proposed or reached a plea agreement; (2) The discussion was with the United States Attorney and Federal Defender, not the attorneys litigating the case (although the Judge acknowledged that otherwise it might be considered a "classic negotiation session"); and (3) The rule protects the defendant, not the Government, from judicial coercion. The Judge further held that recusal was not necessary because Mr. Salahuddin had waived recusal, because neither the denial of the Government's motion nor comments made in judicial rulings were a basis for recusal, and because the October 9 meeting did not amount to interference with the Government's prosecutorial function.

Trial was set for May 18, 2009. On May 12, the Government filed in the district court a motion to stay proceedings pending a petition for writ of mandamus in this court. The next day, the Government filed in this court a petition for a writ of mandamus and a motion to stay district court proceedings pending resolution of the petition. The Government requests a writ of mandamus directing the Judge to recuse himself from the case and vacate all orders entered after October 20, 2008, when the

Government filed its motion for recusal. Both this court and the district court granted motions to stay the proceedings. We ordered Mr. Salahuddin to respond and invited a response from the Judge. Those responses have now been filed.

## II

## DISCUSSION

In considering a petition for a writ of mandamus seeking the disqualification of a district judge, we review that judge's denial of a recusal motion de novo. *Hook v. McDade*, 89 F.3d 350, 353-54 (7th Cir. 1996).

## A.

The All Writs Act, 28 U.S.C. § 1651, permits courts created by Act of Congress to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See generally United States v. Denedo*, 120 S. Ct. 2213, 2220-22 (2009). Courts of appeals traditionally have employed the writ of mandamus to confine a district court to the "lawful exercise of its prescribed jurisdiction." *See Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). We have held that a petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), is the proper--indeed the only--means of reviewing a district court's denial of a motion for recusal.[6] The

---

[6] *See, e.g., In re United States*, 398 F.3d 615, 617 (7th Cir. 2005); *United States v. Boyd*, 208 F.3d 638, 645 (7th Cir. 2000); *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998); *United States v. Horton*, 98 F.3d 313, 316-17 (7th Cir. 1996); *Hook v. McDade*, 89

(continued...)

Government's petition is therefore the appropriate means of seeking review in this court of the district court's denial of the Government's motion for recusal.

Section 455(a) of the Judicial Code provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Supreme Court has explained that "'[t]he goal of section 455(a) is to avoid even the appearance of partiality.'" *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quoting *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983)). Accordingly, we have required recusal "whenever there is 'a reasonable basis' for a finding of an 'appearance of partiality under the facts and circumstances' of the case." *PepsiCo, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985) (quoting *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977)). Recusal is required when a "reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990); *Nat'l Union Fire Ins. Co.*, 839 F.2d at 1229.[7]

Of course, needless recusals exact a significant toll; judges therefore should exercise care in determining whether recusal is

[6](...continued)
F.3d 350, 354 n.2 (7th Cir. 1996); *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990); *Taylor v. O'Grady*, 888 F.2d 1189, 1201 (7th Cir. 1989); *United States v. Balistrieri*, 779 F.2d 1191, 1204-05 (7th Cir. 1985); *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117-18 (7th Cir. 1977); *but see Boyd*, 208 F.3d at 649-50 (Ripple, J., dissenting) (noting that this position is in tension with two decisions by the Supreme Court and has not been followed by other courts of appeals).

[7] *See also Cheney v. United States District Court*, 541 U.S. 913, 924 (2004) (Scalia, J., in chambers); *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (statement of Rehnquist, C.J.).

necessary, especially when proceedings already are underway. "[A] change of umpire mid-contest may require a great deal of work to be re-done . . . and facilitate judge-shopping." *Nat'l Union Fire Ins. Co.*, 839 F.2d at 1229 (citation omitted).

**B.**

Mr. Salahuddin submits that the Government's petition is untimely. He suggests that this court requires litigants to petition for mandamus "immediately after a judge grants or denies a motion for recusal." Salahuddin Br. at 8 (citing *United States v. Horton*, 98 F.3d 313 (7th Cir. 1996), and *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985)). Here, the district court denied the Government's motion for recusal on January 8, 2009, and the Government did not file this petition until May 12, 2009, four months after the motion was denied and one month after the motion for reconsideration was denied.

We cannot accept this submission. The time during which the Government sought reconsideration of the district court's order denying its motion for recusal should not be considered in determining the timeliness of the petition.[8] Mr. Salahuddin suggests no reason why the rule should be otherwise, and, indeed, there are significant benefits in excluding that period. Most importantly, there is significant judicial economy in not requiring a party to file a petition for writ of mandamus in the court of appeals while the district court reconsiders its earlier denial. This approach gives the district court adequate time to reflect on its order and, if necessary, correct its own error before another court becomes involved. Both the parties and the court of appeals are spared

---

[8] Neither the All Writs Act, 28 U.S.C. § 1651(a), nor Federal Rule of Appellate Procedure 21, provides a specific time frame within which all petitions for writ of mandamus must be filed.

the burden of an additional round of litigation.[9] Requiring the petition to be filed any earlier would accomplish very little; indeed, in most instances this court would withhold judgment until the district court had ruled on the motion to reconsider.

Here, the Government's petition was filed more than a month after the district court denied its motion to reconsider. Mr. Salahuddin suggests that this delay does not comport with this court's requirement that a petition for a writ of mandamus to compel the recusal of a district judge must be made "immediately" or not at all. *Horton*, 98 F.3d at 316-17; *Balistrieri*, 779 F.2d at 1205. Read in context, however, these cases simply stand for the proposition, well-established in this circuit, that a motion for recusal under section 455(a) must be made before trial; after trial, the damage to the public perception of the judicial system already has been done, and the party may not then seek relief because the simple *appearance* of partiality is, at most, harmless error.[10]

Rather than turning on the term "immediately," our cases have taken a fact-specific, pragmatic approach in determining whether a petition seeking recusal is timely. We have examined the prejudice to any other party or to the district court caused by the delay and have

---

[9] *Cf. United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam) (noting that deferring appellate consideration until disposition of a petition for rehearing saves time and reduces the burden on appellate courts by "giving district courts the opportunity promptly to correct their own alleged errors"); *Divane v. Krull Elec. Co.*, 194 F.3d 845, 850 (7th Cir. 1999) (explaining that Federal Rule of Civil Procedure 59(e) allows district courts to correct their own errors, thus avoiding "unnecessary appellate procedures" (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996))).

[10] *See United States v. Ruzzano*, 247 F.3d 688, 694 (7th Cir. 2001); *United States v. Troxell*, 887 F.2d 830, 833 (7th Cir. 1989) (collecting cases); *N.Y. City Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 978-79 (7th Cir. 1986) (per curiam).

examined the amount of work that the delay would cause the new judge to redo. *See Nat'l Union Fire Ins. Co.*, 839 F.2d at 1232. Here, neither the Judge nor Mr. Salahuddin have suggested any prejudice caused by the time it has taken the Government to file its petition. Since denying the Government's motion for recusal, the Judge has issued, in addition to the denial of the Government's motion for reconsideration and the order staying proceedings pending this petition, only a handful of orders, most of which concern scheduling. The Judge did rule on the major issue on remand, the suppression motions, after the Government filed its motion for recusal. However, the Judge's decision to resolve all the suppression motions in the same order as the denial of the recusal motion cannot be attributed to the Government. Any delay attributable to the Government would not require significant work to be redone by a new judge.

Moreover, the Government has given a significant reason for the four-week intermission between the denial of its motion for reconsideration and the filing of this petition. The United States Attorney's office was required, under the policies of the Department of Justice, to obtain the permission of the Solicitor General before filing the petition for a writ of mandamus.[11] *See* United States Attorneys' Manual, § 2-2.124. The petition was filed the day after permission was received. While this requirement necessarily slows the progress of a case, it has long been recognized as a salutary device to ensure that governmental litigation is conducted in a manner consonant with national norms rather than provincial priorities.

---

[11] This reason is mentioned in footnote 1 of the motion for stay, but not in the petition for a writ of mandamus.

## C.

We now turn to the merits of the Government's submission. At bottom, this matter requires that we decide one fundamental issue: whether a reasonable, well-informed observer could question the Judge's impartiality. *See, e.g.*, *Hatcher*, 150 F.3d at 637.[12]

In answering this question, we must examine carefully the nature of the Judge's meeting with the heads of the two governmental offices involved. The Judge called an off-the-record meeting with the United States Attorney and the Federal Defender. This manner of proceeding in a federal criminal matter is indeed unusual and necessarily raises substantial concerns in the mind of any well-informed observer. We must take special note of the fact that no record was taken of the meeting. In other contexts, this and other courts have pointed out the need to make a record whenever substantive discussions take place between court and counsel, and we see no reason to exempt the present situation from that admonition.[13]   Indeed, the extraordinary nature of this meeting,

---

[12] This is an objective standard. *Hook*, 89 F.3d at 353-54. In denying the motion for reconsideration, the Judge suggested that the fact that Mr. Salahuddin did not desire his recusal demonstrates that such a standard has been met. We respectfully disagree. Mr. Salahuddin is not an impartial observer. The Judge's view of the future course of this prosecution clearly was favorable to the defendant.

[13] *See United States v. Head*, 927 F.2d 1361, 1376 (6th Cir. 1991) (observing that the parties' divergent recollections of what occurred during an off-the-record presentence conference demonstrated the  the "serious dangers of such discussions off the record" and, "[b]ecause of the uncertainties attendant to this procedure," remanding "with directions to afford a full opportunity to defendant to address those parts of the sentencing" affected by the in-chambers conference); *cf. Maltby v. Winston*, 36 F.3d 548, 561 n.18 (7th Cir. 1994) (noting that "it is the responsibility of the district court, if it conducts the instruction conference without a court reporter,

(continued...)

evidenced by the Judge's initial willingness to disqualify himself, should it be requested, and his recognition that such a proceeding was extraordinary, should have made the need to memorialize the event even more obvious to the participants.

The substance of the discussion at the meeting convinces us that the Judge misapprehended the limits of his authority. The parties agree that, at the October 9 meeting, the Judge suggested a specific plea bargain. This participation was clearly violative of the specific prohibition in the Federal Rules of Criminal Procedure that forbids the court from becoming involved in plea negotiations. *See* Fed. R. Crim. P. 11(c)(1).[14] As the Fifth Circuit has noted, "such involvement 'is likely to

---

[13](...continued)

to provide the parties with an opportunity to specifically object to jury instructions on the record"); *United States v. Gallo*, 763 F.2d 1504, 1532 (6th Cir. 1985) (holding that the defendant had waived violations of Court Reporters Act but noting that the "safe course" was to "let the reporter record what takes place" during side bars).

[14] Federal Rule of Criminal Procedure 11(c)(1) states:

(c) Plea Agreement Procedure.

> 1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
>> (A) not bring, or will move to dismiss, other charges;
>>
>> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is
>>
>> (continued...)

impair the trial court's impartiality.  The judge who suggests or
encourages a particular plea bargain may feel a personal stake in the
agreement . . . and may therefore resent the defendant who rejects his
advice.'" *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993) (quoting
*United States v. Adams*, 634 F.2d 830, 840 (5th Cir. 1981)) (omissions in
original).  We have expressed the same view in *United States v. Kraus*, 137
F.3d 447, 452 (7th Cir. 1998), when we wrote that "[e]xcluding the judge
from the plea discussions thus serves three purposes:  it minimizes the
risk that the defendant will be judicially coerced into pleading guilty, it
preserves the impartiality of the court, and it avoids any appearance of
impropriety."  The judge who advocates a particular plea bargain may
resent the government for disagreeing.[15]

Here we must conclude that the Judge did more than simply
participate in a plea bargain.[16] He questioned the Government's decision

---

[14](...continued)

> appropriate or that a particular provision of the Sentencing
> Guidelines, or policy statement, or sentencing factor does
> or does not apply (such a recommendation or request does
> not bind the court); or

> (C) agree that a specific sentence or sentencing range is the
> appropriate disposition of the case, or that a particular
> provision of the Sentencing Guidelines, or policy
> statement, or sentencing factor does or does not apply
> (such a recommendation or request binds the court once
> the court accepts the plea agreement).

[15] Because of the distinct possibility of such resentment, the Rule is violated
even when no plea negotiation actually takes place.  *See United States v. Baker*, 489
F.3d 366, 371 n.3 (7th Cir. 2007).

[16] *See United States v. Kraus*, 137 F.3d 447, 457 (7th Cir. 1998) (evaluating

(continued...)

to prosecute the matter as a federal case in terms that a reasonable observer might well interpret as critical of the Government's position in the case. The statement that neither party would be pleased with his ruling on the suppression motions could have been interpreted as indicating that he was ill-disposed toward the Government's position and might rule based not on the merits, but on his distaste for its prosecutorial decision. A reasonable, well-informed observer well may have concluded that the Judge was no longer acting as a neutral arbiter, but was advocating for his desired result.

The Supreme Court has noted that:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile, to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original). The parties therefore correctly acknowledge that "[e]xpressions of impatience,

---

[16](...continued)
whether "the error in this case, or the appearance of error, was harmless" and quoting Federal Rule of Criminal Procedure 11(h) for the proposition that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded," but also noting that "insofar as judicial intervention in the negotiation of a plea agreement is concerned, the possibility of harmless error may be more theoretical than real").

dissatisfaction, annoyance, and even anger," do not establish bias or partiality. *Id*. at 555-56. We must conclude, however, that, taken in context, some of the Judge's comments go further and comment on substantive matters, rather than the conduct of the proceedings. For example, as we have just noted, the Judge questioned why this case was accepted for federal prosecution, expressed concern about the time that had passed between Mr. Salahuddin's initial arrest and the commencement of federal proceedings, and suggested that this case was an embarrassment to the justice system and an inefficient allocation of taxpayer resources. He also sought to avoid a conviction under 18 U.S.C. § 924(c), so as to prevent imposition of the fifteen-year mandatory minimum sentence.

In expressing these views and insisting that action be taken to conform the future course of litigation to those views, the Judge misapprehended the limits of his authority as the presiding judicial officer and undertook to participate in determinations that are in the proper domain of the Department of Justice.[17] The power of the Executive Branch to make these decisions is a safeguard of liberty. As this court has noted, entrusting these prerogatives to the Executive ensures that "'no one can be convicted of a crime without the concurrence of all three branches.'" *United States v. O'Neill*, 437 F.3d 654, 660 (7th Cir. 2006) (Posner, J., concurring in the judgment) (quoting *In re United States*, 345 F.3d 450, 454 (7th Cir. 2003)). Judges do not possess, and should not attempt to exercise, prosecutorial discretion.

---

[17] We cannot accept the suggestion that the appearance of impropriety was somewhat lessened by the participation at the meeting of policy-level officers--the United States Attorney and the Federal Defender--rather than the litigating attorneys. The United States Attorney has the ultimate authority to prosecute cases. *See* 28 U.S.C. § 547. A reasonable observer certainly could conclude that the purpose of the meeting was to pressure the officers present at the meeting to direct their subordinates to undertake the course of action preferred by the Judge.

A motion under section 455(a) is "directed against the *appearance* of partiality, whether or not the judge is actually biased." *Balistrieri*, 779 F.2d at 1204 (emphasis supplied). We must conclude that the Judge's actions, assessed in their totality, are such that a reasonable, well-informed observer would question his partiality. *Hook*, 89 F.3d 350 at 353-54.

The question before us is *not* whether the Judge is biased. If the Government had the burden to establish that fact, it would have indeed a high mountain to climb in light of the Judge's distinguished public service of almost forty years. However, we must conclude that the Government is entitled to the issuance of the writ of mandamus for which it has petitioned because it has established that a reasonable well-informed observer could question the Judge's impartiality. Accordingly, all orders entered by the Judge after the motion for recusal was filed must be vacated.[18] The Judge is directed to remove himself from further proceedings in this matter.

It is so ordered.[19]

---

[18]  *See N.Y. City Hous. Dev. Corp.*, 796 F.2d at 979.

[19]  Because we have granted the Government's writ of mandamus, the Government's motion to compel disclosure is dismissed as moot.