In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1639

IN RE:

SHERWIN-WILLIAMS COMPANY,

*Petitioner.*

Petition for Writ of Mandamus from the
United States District Court for the
Eastern District of Wisconsin.
Nos. 07-C-0441, 07-C-0303, 07-C-0865 & 10-C-0075—
**Lynn Adelman**, *Judge.*

SUBMITTED MARCH 17, 2010—DECIDED JUNE 7, 2010

Before KANNE, ROVNER, and TINDER, *Circuit Judges.*

PER CURIAM. In this petition for a writ of mandamus, Sherwin-Williams Company asks us to order District Judge Lynn Adelman to recuse himself from presiding over four cases in which it is a defendant. Sherwin-Williams argues that a law review article co-written by Judge Adelman creates an appearance that the judge will decide the case other than on the merits. Judge Adelman denied Sherwin-Williams's motion for recusal in the district court, and we do the same for the petition for writ of mandamus.

The basis of Sherwin-Williams's petition is a 2007 article Judge Adelman co-authored in response to criticism of five decisions issued by the Wisconsin Supreme Court in 2005. One of the opinions discussed was *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523 (Wis. 2005), in which the Wisconsin Supreme Court held that a plaintiff who could prove that he was injured by ingesting white lead carbonate pigments in his home but could not identify the manufacturer of the pigments could none-theless recover in a suit against pigment manufacturers. Judge Adelman is now presiding under diversity juris-diction over four cases against manufacturers of white lead carbonate pigments. In each case the plaintiffs seek recovery based on *Thomas*. Sherwin-Williams is one of the defendants in those cases, and the company asked Judge Adelman to recuse himself from the cases under 28 U.S.C. § 455(a) on the ground that a reasonable person would believe, based on Judge Adelman's article, that the judge is unable to decide the case impartially. Judge Adelman denied the motion, and Sherwin-Williams renews its arguments in its mandamus petition.

Under traditional theories of negligence and strict products liability, the plaintiff in *Thomas* could not recover against the pigment manufacturers because he could not establish which company caused his injuries. Article I, Section 9, of the Wisconsin Constitution promises, how-ever, that "[e]very person is entitled to a certain remedy in the laws for all injuries, or wrongs," and the Wisconsin Supreme Court has concluded from this provision that, "'[w]hen an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts,

under the Wisconsin Constitution, can fashion an ade-
quate remedy.' " *Collins v. Eli Lilly Co.*, 342 N.W.2d 37, 45
(Wis. 1984) (quoting *D.H. v. State*, 251 N.W.2d 196, 201
(Wis. 1977)). Previously, the Wisconsin Supreme Court
crafted such a remedy for a plaintiff who complained of
birth defects allegedly resulting from exposure to the
drug diethylstilbestrol. *Collins*, 342 N.W.2d at 49. All
diethylstilbestrol products shared the same chemical
formula, and they were often produced in a generic
form. *Id.* at 44. Prescriptions were frequently filled with-
out regard to manufacturer or brand. *Id.* Thus, the
plaintiff was unable to establish which company that
manufactured or marketed the drug harmed her, and
she was left without any recourse. *Id.* at 44-45. The court
in *Collins* held that if the plaintiff could establish
that her birth defects resulted from exposure to diethylstil-
bestrol and that the defendants' conduct in producing
or marketing it constituted a breach of duty, she could
recover against any company that manufactured or
marketed the type of diethylstilbestrol to which she
was exposed—that is, against any company that contrib-
uted to her risk of injury. *Id.* at 49-50.

The court in *Thomas* ruled that the same approach
was justified for cases involving white lead carbonate
pigments. 701 N.W.2d at 558. The court reasoned that the
risk-contribution theory could apply even though such
pigments, unlike diethylstilbestrol, did not share an
identical chemical formula; it was enough that the pig-
ments were functionally interchangeable, physically
indistinguishable, and created equivalent risks of lead
poisoning. *Id.* at 559-62. Another difference from *Collins*

was that the plaintiff in *Thomas* was not entirely without a remedy for his injuries. He also sued his former landlords for their negligent maintenance of the house in which he was exposed to lead, and he recovered against their insurers. *Id.* at 552. Yet, explained the court, the Wisconsin Constitution promises not just a remedy for every injury, but also a remedy for every wrong, and the pigment manufacturers and landlords were charged with different wrongs: the manufacturers, with making poisonous products; the landlords, with negligently maintaining real estate. *Id.* at 554. A remedy to match the manufacturers' wrong was still wanting, and so it was appropriate to fashion one. *Id.* at 551-52.

The decision in *Thomas* was much maligned, and so were four other 2005 decisions of the court. In response to this criticism, Judge Adelman co-authored an article praising the Wisconsin Supreme Court's use of its judicial power. Lynn Adelman & Shelley Fite, *Exercising Judicial Power: A Response to the Wisconsin Supreme Court's Critics*, 91 Marq. L. Rev. 425 (2007). Judge Adelman's article reviewed the five cases and defended the rulings as appropriate exercises of the high court's judicial power, given the unique role the state constitution assigns the court in overseeing the administration of justice. *Id.* He explicitly disclaimed any opinion on the merits of any of the cases. *Id.* at 428. Judge Adelman did comment that, to the extent the facts in *Thomas* suggested that the plaintiff could otherwise have no recovery from a pigment manufacturer, he thought it was a "positive development" for the court to ensure that "the doors of the courthouse remained open." *Id.* at 446.

Mandamus is the appropriate vehicle for a challenge to a district judge's denial of a motion for recusal based on appearance of bias. *United States v. Diekemper*, ___ F.3d ___, 2010 WL 1688524, at *4 (7th Cir. 2010); *In re United States*, 572 F.3d 301, 307-08 (7th Cir. 2009). Our review is de novo. *In re United States*, 572 F.3d at 307; *Hook v. McDade*, 89 F.3d 350, 353-54 (7th Cir. 1996); *United States v. Balistrieri*, 779 F.2d 1191, 1203 (7th Cir. 1985).

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In evaluating whether a judge's impartiality might reasonably be questioned, our inquiry is "from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*." *Cheney v. United States Dist. Court*, 541 U.S. 913, 924 (2004) (Scalia, J., in chambers) (citation omitted); *See also Sao Paolo State of the Federative Republic of Brazil v. Am. Tobacco Co.*, 535 U.S. 229, 232-33 (2002); *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008); *In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008), *cert denied*, 129 S. Ct. 1401 (U.S. Feb. 23, 2009); *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004); *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003). That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant. *United States v. Bonds*, 18 F.3d 1327, 1331 (6th Cir. 1994). Consequently, where a judge's comments, writings, or rulings are the basis for a recusal request, our analysis assumes that a reasonable person is familiar with the documents at issue, as well as the context in

which they came into being. *See White v. NFL*, 585 F.3d 1129, 1139-40 (8th Cir. 2009).

In addition to being well-informed about the surrounding facts and circumstances, for purposes of our analysis, a reasonable person is a "thoughtful observer rather than . . . a hypersensitive or unduly suspicious person." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990), *quoted in O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001), and *Hook*, 89 F.3d at 354; *accord Holland*, 519 F.3d at 913. Finally, a reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion. *See Cheney*, 541 U.S. at 924; *See also In re Mason*, 916 F.2d at 387 (concluding no appearance of bias created by fact that district judge had, before appointment to bench, made political contribution to party in case before him; judges with political ties regularly cast those interests aside and resolve cases on facts and law).

Sherwin-Williams contends that a reasonable observer could conclude from Judge Adelman's article that he believes that *Thomas* was correctly decided and that he therefore will not consider Sherwin-Williams's attacks on *Thomas* fairly. As suggested in our earlier characterization of the article, we do not think that a reasonable person, having actually read the article, would think that Judge Adelman had expressed any view as to the merits in *Thomas* in arguing that it and the other decisions fell within the Wisconsin high court's authority. But

the bigger failing in this contention is that, as Judge Adelman noted in denying the motion for recusal, his views of *Thomas*, to the extent he has any, are irrelevant. Because these are diversity cases, Judge Adelman is obligated to follow state law, as interpreted by the state supreme court. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 80 (1938)). He cannot revisit the holding in *Thomas*, not even if he were persuaded that Sherwin-Williams's objections are meritorious. *See Rennert v. Great Dane Ltd. P'ship*, 543 F.3d 914, 917 (7th Cir. 2008). A reasonable person would understand this and would appreciate that Judge Adelman's impartiality in these cases is in no way called into question by anything he may have said about the merits of *Thomas*.

Sherwin-Williams also argues that the mere fact that Judge Adelman published an article that defends, in some fashion, a ruling that was favorable to certain lead-paint plaintiffs would make a reasonable person suspect that Judge Adelman has an unusual interest in assisting such plaintiffs—i.e., that he has an ax to grind. But someone who was aware of the controversy regarding the limits of the Wisconsin Supreme Court's power and knew that federal judges may speak, write, and participate in other activities concerning the legal issues of the day, *see* Code of Conduct for United States Judges, Canon 4A(1), would find nothing unseemly about Judge Adelman publishing a law review article on the topic. Sherwin-Williams suggests that this scenario is analogous to cases in which recusal has been ordered because of a district judge's comments to the media or

at conferences, but in each of those decisions the commented-upon-case was pending before the district judge. *E.g., United States v. Microsoft Corp.*, 253 F.3d 34, 107-15 (D.C. Cir. 2001); *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001); *Hathcock v. Navistar Int'l Trans. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995); *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993). Canon 3(A)(6) generally discourages public comments about the merits of pending cases, and such comments may understandably raise questions about a judge's impartiality in the case over which he or she is presiding. But those concerns are not implicated here because *Thomas* is not before Judge Adelman and never has been.

Sherwin-Williams has not established that Judge Adelman's article would make a reasonable, thoughtful, and well-informed observer question his impartiality. Accordingly, the petition for writ of mandamus is DENIED.